**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3902-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ARTHUR L. THOMPSON,
a/k/a NASHEED THOMPSON,

    Defendant-Appellant.

_____

Submitted March 6, 2025 – Decided March 17, 2025

Before Judges Mawla and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 11-08-1559.

Steven F. Roth, attorney for appellant.

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Hannah Faye Kurt, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Arthur Nasheed Thompson appeals from a July 11, 2023 order denying his second petition for post-conviction relief (PCR) based on ineffective assistance of trial counsel, without an evidentiary hearing. We affirm.

On direct appeal, we previously affirmed defendant's convictions and sentence for murder, felony murder, first-degree armed robbery, second-degree burglary, conspiracy, and related weapons possession offenses following a jury trial, and aggregate life sentence, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. State v. Thompson, No. A-4022-12 (App. Div. May 10, 2010) (slip op. at 8), certif. denied, 231 N.J. 119 (2017). We also affirmed the denial of defendant's first petition for PCR. State v. Thompson, No. A-3053-18 (App. Div. Apr. 20, 2020) (slip op. at 6).

The underlying facts supporting defendant's conviction and sentence are not in dispute and are briefly summarized here to provide context for our discussion. Defendant and a co-defendant Derrick Miller were convicted of a home invasion and murder that occurred on January 18, 2010, at a residence in Irvington. The home was a two-family dwelling where Darrel Barrow lived with his daughter and granddaughter on the second floor and his sister, Melissa Barrow, lived on the first floor with her boyfriend Anthony Hunt, the victim,

and her two children.[1]

On the night of the murder, Melissa saw Hunt on his knees with two men standing on either side of him. One of the men had Hunt in a headlock and another man was pointing a gun at him. Darrel testified he was upstairs in bed when he heard a scuffle erupt in the downstairs apartment and upon going downstairs, he saw two individuals in the home, one wearing a "netted mask" and pointing a gun at Hunt, and another holding him by the neck. Darrel heard a gunshot, ran out of the home, and hid. He heard more gunfire and saw two men exit the home, get into a car, and drive away. Prior to their departure, Darrel was able to see the face of one of the assailants. Police arrived shortly thereafter, and Darrel pointed them in the direction of the car. The responding officer testified he followed the car and pulled it over several blocks from the home with two males inside, who were later identified as Miller and defendant.

At the grand jury hearing on July 16, 2010, the State called Detective Christopher Smith to testify as to the forensic serology lab tests conducted on the clothing worn by both defendants. Detective Smith testified that he had received "information from the criminalistics laboratory" that the items he had

---

[1] Because Melissa and Darrel share the same surname as many of the people living in the Irvington residence, we refer to Melissa and Darrel by their first names for clarity. We intend no disrespect.

A-3902-22

submitted "had presumptive positive results for the appearance of blood on certain items that they were wearing, [defendant's] boots and Miller's white thermal shirt." The State queried, "[a]nd those items, based on that presumptive positive test for blood . . . remained at the lab for further testing. Is that correct?" To which Detective Smith responded "[c]orrect."

Detective Smith confirmed he had received information from the laboratory indicating one of the footprint impressions taken at the crime scene "shared the same manufacture design with the boot that [defendant] was wearing at the time." At the conclusion of his testimony, a grand juror asked if the blood on the clothing was a match for the victim. Detective Smith responded the test "is . . . still pending." The court stated at the June 3, 2011 suppression hearing, "the clothes were not subject[ed] to forensic serology testing until March 26, 2010, and the DNA testing until June 9, 2010."

Approximately three weeks later, a second grand jury hearing occurred during which the State called Detective Smith to read the transcript from the first indictment into evidence. Detective Smith read the testimony regarding taking the defendants' clothing and shoes to the laboratory. The State queried, "the white thermal shirt taken from Miller at that time was found in the laboratory to have blood on it, the DNA of which corresponded to the DNA of

4

the victim. Is that right?" Detective Smith responded, "[t]hat's correct." The detective confirmed Miller was wearing three pairs of pants, two of which had "reddish[-]brown blood type stains" on them, which at the time of the hearing had not yet been analyzed but "[t]hose items, based on that presumptive positive test for blood remained at the lab for further testing."

The grand jury returned the superseding indictment, charging defendant and Miller with the same nine counts: first-degree murder, N.J.S.A. 2C:11-3(a)(1); and (2) first-degree felony murder, N.J.S.A. 2C: 11-3(a)(3). It also originated two additional counts of: second-degree burglary, N.J.S.A. 2C:18-2(b)(1); and second-degree conspiracy to commit burglary, N.J.S.A. 2C:5-2.

At trial, the jury convicted defendant and Miller on all counts charged in the indictment. Defendant was sentenced to life imprisonment with a thirty-year term of parole ineligibility on the murder conviction subject to the NERA.

Relevant to his second PCR petition, defendant argued trial counsel was ineffective for: the "sloppy and unprofessional" cross-examination of Detective Smith; failure to adequately prepare for the hearing; failure to challenge Detective "Smith's statements regarding the blood evidence, and never [seeking] a copy of the lab test results that [Detective] Smith had shown that blood was found on [defendant's] clothing and boots"; sitting "in silence during the second"

hearing; failing to join Miller's motion to dismiss; failing to assist defendant in legal research and preparation of his pro se motion for dismissal; failing to ensure defendant's indictment received "the proper level of scrutiny that it deserved" at the June 13, 2011 dismissal hearing; and failing to assist defendant in filing his "speedy trial motion." The State did not file an answer to defendant's second PCR petition.

The PCR court rejected defendant's arguments and denied the petition, finding that "there was evidence that DNA was found of the victim on Miller but not on [defendant]. There are a plethora of explanations perhaps for that." The court explained "in the case of [defendant], the results of the [DNA] testing actually inured to his benefit in that it confirmed there was no DNA" of the victim on defendant's clothing.

The court concluded, "the jury decided that [it] wasn't enough here to say we're going to acquit or raise the [specter] of reasonable doubt. Because they had . . . significant evidence . . . [f]rom eyewitness testimony . . . that is corroborated because the police ultimately pulled that car over." The court noted, the grand jury "heard it. And ultimately, they decided still that [defendant] was guilty of the crimes charged in the indictment."

A-3902-22

The PCR court found "[w]ith respect to deficient performance, the test is whether counsel's conduct fell below an objective standard of reasonableness. The second prong is based on that deficiency, would the outcome of the trial [have] been any different." The court found the arguments were "without merit." It explained that based on the length of the trial, the numerous motions, the two grand jury presentations, and the magnitude of the evidence—including eyewitness testimony—there was nothing "improper done that would warrant . . . an evidentiary hearing."

Defendant raises the following arguments on appeal:

> POINT I
>
> THE TRIAL COURT ERRED BY REFUSING TO CONSIDER THE CASE OF STATE V. FRITZ[2] IN DETERMINING WHETHER DEFENSE COUNSEL'S FAILURE TO OFFER MATERIAL IMPEACHMENT EVIDENCE AT TRIAL WAS PRIMA FACIE INDICATIVE OF INEFFECTIVE ASSISTANCE OF COUNSEL.
>
> POINT II
>
> THE PCR COURT ERRONEOUSLY CONCLUDED THAT DEFENDANT'S SECOND, "SUPERSEDING" INDICTMENT CURED ANY PREJUDICE TO DEFENDANT RESULTING FROM THE STATE'S LEAD DETECTIVE'S FALSE AND MISLEADING GRAND JURY TESTIMONY AND EXCULPATORY

---

2  105 N.J. 42 (1987).

OMISSIONS IDENTIFIED IN HIS FIRST INDICTMENT—RENDERING THE DEFENDANT'S INEFFECTIVENESS OF COUNSEL CLAIM MOOT.

POINT III

THE STATE VIOLATED THE RULES BY FAILING TO SERVE AND FILE AN ANSWER TO THE DEFENDANT'S PETITION FOR PCR, PURSUANT TO . . . [RULE] 3:22-9.

We review the denial of PCR without an evidentiary hearing de novo. State v. Jackson, 454 N.J. Super. 284, 291 (App. Div. 2018). The de novo standard of review also applies to mixed questions of fact and law. State v. Harris, 181 N.J. 391, 420 (2004).

To reverse a conviction based on ineffective assistance of counsel, a defendant must demonstrate that both: (1) "counsel's performance was deficient" and (2) counsel's "errors were so serious as to deprive the defendant of a fair trial." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Fritz, 105 N.J. at 58 (adopting the two-part Strickland test). Under Strickland's first prong, a petitioner must show counsel's performance was deficient by demonstrating counsel's handling of the matter "fell below an objective standard of reasonableness" and that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." Id. at 687-88.

Under the "'second, and far more difficult prong of the' Strickland standard," State v. Gideon, 244 N.J. 538, 550 (2021) (quoting State v. Preciose, 129 N.J. 451, 463 (1992)), a defendant "must show that the deficient performance prejudiced the defense," State v. O'Neil, 219 N.J. 598, 611 (2014) (quoting Strickland, 466 U.S. at 687).  To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Gideon, 244 N.J. at 550-51 (alteration in original) (quoting Strickland, 466 U.S. at 694).  Proof of prejudice under Strickland's second prong "is an exacting standard."  Id. at 551 (quoting State v. Allegro, 193 N.J. 352, 367 (2008)).  A defendant seeking PCR "must 'affirmatively prove prejudice'" to satisfy the second prong of the Strickland standard.  Ibid. (quoting Strickland, 466 U.S. at 693).

To prevail on a claim of ineffective assistance of counsel, a defendant must establish both prongs of the Strickland standard.  466 U.S. at 687; State v. Nash, 212 N.J. 518, 542 (2013).  A failure to satisfy either prong requires the denial of a PCR petition founded on an ineffective assistance of counsel claim.  Strickland, 466 U.S. at 700.  "With respect to both prongs of the Strickland test,

9

a defendant asserting ineffective assistance of counsel on PCR bears the burden of proving [their] right to relief by a preponderance of the evidence."  Gaitan, 209 N.J. at 350 (citations omitted).

Rule 3:22-12(a)(2) limits the filing of a subsequent petition for PCR to one year after the latest of "the date on which the factual predicate for the relief sought was discovered, if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence" or "the date of denial of the first or subsequent application for [PCR] where ineffective assistance of counsel that represented the defendant on the first or subsequent application for [PCR] is being alleged."  R. 3:22-12(a)(2)(B)-(C).  Defendant's first PCR was denied on November 27, 2018, and his second PCR petition filed nearly four years later, on September 12, 2022.  Defendant's second PCR petition is time barred, and defendant offers no basis by which the time bar imposed may be relaxed under Rule 3:22-12(a)(2).

Nonetheless, the PCR court addressed the merits of defendant's petition. Pursuant to our de novo review, we have considered the merits as well and affirm substantially for the reasons expressed in the PCR court's thoughtful oral opinion.  Because defendant's arguments in points one and two of his brief are related, we consider them together.

A-3902-22

Defendant first asserts the PCR court erred by refusing to consider whether defense counsel's failure to offer material impeachment evidence against Detective Smith at trial was prima facie indicative of ineffective assistance of counsel. In Fritz, the defendant asserted counsel's inadequate preparation time prevented him from contacting possible witnesses and failure to object to testimony were instances of "potentially devastating" inadequate assistance of counsel. 105 N.J. at 49.

Relying on Fritz, defendant maintains "defense counsel was unaware that [D]etective Smith had previously made knowingly false and misleading statements and omissions of fact that inculpated [defendant] at his earlier [g]rand [j]ury indictment hearing." (citing 105 N.J. at 45-49, 67). And "[l]ike in Fritz, Smith's grand jury testimony would have been 'potentially devastating' to Smith's credibility at trial." (quoting id. at 49). More particularly, defendant asserts trial counsel was ineffective for failing to impeach Detective Smith based on his prior testimony before the grand jury when he testified both defendants' clothing had "presumptive positive results for the appearance of blood."

Defendant further argues "[t]he abject failure of counsel to discover and investigate [Detective] Smith's false and misleading statements . . . had a deleterious impact on the fundamental fairness of [defendant's] pre-trial

11

proceedings and the overall outcome of his prosecution—depriving him of effective assistance of counsel." He asserts the court incorrectly rejected his arguments because the first indictment was superseded and concluded any alleged ineffectiveness of counsel as to the first indictment had no bearing on the end result. Defendant also contends during the second indictment, the State failed to mention that his clothing tested negative for the victim's blood while emphasizing Miller's clothing tested positive.

We discern no support in the record for defendant's contention trial counsel provided ineffective assistance by failing to impeach Detective Smith at trial with his initial grand jury testimony. In the first grand jury hearing, Detective Smith testified he received "information from the criminalistics laboratory" that the items he had submitted "had presumptive positive results for the appearance of blood on certain items that they were wearing, [defendant's] boots and Miller's white thermal shirt." And, in response to a juror question, Detective Smith testified the test "is . . . still pending."

On August 12, 2011, during the second hearing, the State called Detective Smith to read the transcript from the first indictment into evidence and to clarify his testimony regarding the submission of defendants' clothing and shoes for

12

DNA testing. He testified that the laboratory testing of the white thermal shirt taken from Miller had DNA corresponding with the victim's DNA on it.

Critically, by the time of the superseding indictment and certainly at the time of the trial, there was no testimony suggesting defendant's clothing showed evidence of the victim's blood or DNA. Instead, the trial record makes clear the victim's blood was found solely on Miller's clothing, which as the PCR court explained, inured to the benefit of defendant, and the jury was made aware of this undisputed fact.

Neither are we persuaded that Fritz supports defendant's contention counsel was ineffective as the issue here was not one of counsel's inadequate preparation for trial, but that the State had obtained a superseding indictment thereby ameliorating any prior issue with Detective Smith's testimony. Defendant's arguments do not persuade us that trial counsel would have been permitted to use Detective Smith's first grand jury testimony to cross-examine or impeach him, or that such a strategy, if permitted, would have been effective given the superseding indictment wherein the testimony made clear it was Miller's clothing that had tested positive for the presence of the victim's blood or DNA.

13

Moreover, the fact that the jurors, knowing this evidence, convicted defendant of the charges in the indictment is not indicative of any deficiency on the part of trial counsel's performance vis-à-vis impeachment of Detective Smith based on outdated grand jury testimony. Detective Smith's initial grand jury testimony was of no consequence once the State obtained the superseding indictment. A defendant may not rely on "bald assertions that he was denied the effective assistance of counsel." State v. Peoples, 446 N.J. Super. 245, 254 (App. Div. 2016) (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)).

Because defendant cannot show counsel's performance was constitutionally deficient, we need not examine his arguments under Strickland's second prong—prejudice prong. Strickland, 466 U.S. at 700 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.").

Lastly, defendant argues the PCR court's order should be reversed because the State "violated [Rule 3:22-9] by failing to serve and file an answer" to his petition. Rule 3:22-9 provides "the prosecutor shall, within [sixty] days after service of a copy of the amended petition or the notice that no amended petition will be filed, serve and file an answer to the petition or amended petition."

Defendant filed his PCR petition on February 17, 2023. As we noted, the State did not file any answer. Defendant argues he was "forced to proceed with oral argument on July 11, 2023, without the benefit of the State's responsive answer to his petition, as is required under [Rule] 3:22-9."

Although the Rule requires the State to file and serve an answer, defendant must still satisfy both prongs of the Strickland test in support of his petition for PCR. R. 3:22-9; Preciose, 129 N.J. at 459. The PCR court denied defendant's petition despite the State's failure to submit an answer, based on its examination of defendant's substantive claims. We are unpersuaded the State's failure to submit an answer prejudiced defendant because his petition lacked merit even without opposition.

To the extent we have not addressed an issue raised by defendant, it is because it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hasley

Clerk of the Appellate Division